
**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JORGE GUERRA-LEYVA, AKA Jorge C. Guerra, <br><br> Petitioner, <br><br> v. <br><br> MERRICK B. GARLAND, Attorney General, <br><br> Respondent. | No. 18-70504 <br><br> Agency No. A074-059-323 <br><br> MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted June 13, 2022[**]
San Francisco, California

Before: S.R. THOMAS and GOULD, Circuit Judges, and WU,[***] District Judge.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***] The Honorable George H. Wu, United States District Judge for the Central District of California, sitting by designation.

Jorge Guerra-Leyva, a native of Cuba, petitions for review of the Board of Immigration Appeals' ("BIA") dismissal of his appeal from the denial of his motion to reopen his removal proceedings. We review the agency's denial of a motion to reopen for abuse of discretion. *Agonafer v. Sessions*, 859 F.3d 1198, 1203 (9th Cir. 2017). We have jurisdiction under 8 U.S.C. § 1252. We dismiss in part and deny in part the petition for review.

## I

Guerra-Leyva's motion to reopen was untimely. Motions to reopen must be filed within ninety days of a final removal order. 8 C.F.R. § 1003.2(c)(2); *see id.* § 1003.2(c)(3)(ii) (providing that motions to reopen based on changed country conditions may be filed at any time). Guerra-Leyva's motion was filed about eighteen years after he was ordered removed. The BIA properly concluded that his untimeliness should not be excused.

## A

The BIA acted within its discretion in determining that Guerra-Leyva failed to show changed country conditions material to his claims for relief. Guerra-Leyva produced no evidence suggesting that the conditions relevant to his claims of future persecution and torture were different from those that existed at the time of his 1999 removal hearing. His own affidavit, submitted with his motion, describes

2

the present conditions in Cuba as a continuation of past conditions, noting that the government "*continues to be* a strong dictatorship" (emphasis added). Further, the shifts in diplomatic relations that Guerra-Leyva claims will make it more likely that he will be removed to Cuba are not material to his claims for relief. The fact of removal is assumed when evaluating a petitioner's case for asylum and related relief. Thus, the actual probability of removal has no bearing on the strength of a claim. *See, e.g.*, *Al-Harbi v. INS*, 242 F.3d 882, 890 (9th Cir. 2001) (requiring "proof of a well-founded fear of future persecution *if returned to Iraq*" to demonstrate asylum eligibility (emphasis added)).

B

The BIA also acted within its discretion in declining to equitably toll the deadline for Guerra-Leyva's motion to reopen. Guerra-Leyva's primary argument for equitable tolling is that at the time of his deportation hearing in 1999, he was eligible for adjustment of status under the Cuban Adjustment Act ("CAA"), but was never informed of this possibility and was instead told that he could remain in the United States indefinitely if he did not contest his removal proceedings.[1] This

---

[1] To the extent Guerra-Leyva argued below for equitable tolling on the basis of ineffective assistance of counsel, he has waived this argument in his petition for review.

argument fails because the BIA correctly concluded that Guerra-Leyva was not, in fact, eligible for adjustment under the CAA at the time of his hearing.

Under the CAA, Cuban refugees may apply for adjustment of status on an expedited timeline, but they must nevertheless be admissible under federal immigration law. *See* Cuban Adjustment Act, Pub. L. No. 89-732, 80 Stat. 1161 (providing that "the status of any alien who is a native or citizen of Cuba . . . may be adjusted" if, among other requirements, they are "admissible to the United States"). Guerra-Leyva argues he was admissible, as his controlled substances conviction under Nev. Rev. Stat. § 453.338 could not disqualify him pursuant to 8 U.S.C. § 1182(a)(2)(A)(i)(II)—even under the modified-categorical approach—because the judgment of conviction was ambiguous as to the substance he was convicted of possessing.

Guerra-Leyva's argument is foreclosed by the Supreme Court's recent decision in *Pereida v. Wilkinson*, 141 S. Ct. 754 (2021), and our subsequent decision in *Marinelarena v. Garland*, 6 F.4th 975 (9th Cir. 2021). In *Pereida*, the Court held that an applicant convicted under a divisible state statute that includes some disqualifying offenses retains the burden of showing that his conviction was not disqualifying. *See* 141 S. Ct. at 763 & n.4. Applying that holding, we held that, when faced with such a situation, a petitioner cannot succeed by pointing to

the ambiguity of the record; since the petitioner retains the burden, "ambiguity is insufficient." *Marinelarena*, 6 F.4th at 978. Accordingly, because Guerra-Leyva was convicted under a statute divisible by substance, he cannot prevail by claiming that the record of his conviction was ambiguous as to the type of substance he actually possessed.

## II

We lack jurisdiction over Guerra-Leyva's claim that the agency erred in denying his request for sua sponte reopening. *See Ekimian v. INS*, 303 F.3d 1153, 1159–60 (9th Cir. 2002) (holding that courts generally lack jurisdiction over agency decisions not to sua sponte reopen proceedings). Because the BIA's decision was not "obvious[ly]" grounded in a mistaken belief that it lacked legal authority, the exception to this general rule applied in *Bonilla v. Lynch*, 840 F.3d 575, 588 (9th Cir. 2016), does not apply here. *Lona v. Barr*, 958 F.3d 1225, 1234 (9th Cir. 2020).

**PETITION DISMISSED IN PART; DENIED IN PART**